[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14739
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cv-03329-TWT


LAWYER J. HENDERSON,
and all employees in similar situations,

Plaintiff-Appellant,

versus

KEVIN FRANKLIN,
U.S. SECURITY ASSOCIATES, INC.,
ALDI'S,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 1, 2019)

Before WILLIAM PRYOR, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Lawyer Henderson, proceeding *pro se*, appeals the district court's grant of summary judgment to his former employer U.S. Security Associates, Inc. ("USSA"). Henderson sued USSA under the Fair Labor Standards Act ("FLSA"). Before filing the action, Henderson filed for bankruptcy. The district court concluded that the bankruptcy trustee, not Henderson, was the real party in interest and that the doctrine of judicial estoppel barred his claims. The district court then granted USSA's request for an award of costs. Henderson argues that the district court erred in concluding that he was not the real party in interest and abused its discretion in applying judicial estoppel and awarding costs to USSA. We affirm the order granting summary judgment and the order awarding costs.

## I.    Background

On March 3, 2017, Henderson, through counsel, filed a petition for Chapter 13 bankruptcy. In response to the question on the property schedule which asked whether he had any "[c]laims against third parties, whether or not [he had] filed a lawsuit or made a demand for payment." Henderson responded "no" and filed the schedule. On June 19, 2017, he filed an amended property schedule, which changed the answer about claims against third parties to "yes," listed a "Potential [personal injury] claim against MARTA," and explained that the "[d]ebtor has not yet received an offer and does not have an attorney in this matter." On September 1, 2017, the same day that he filed his complaint in this case, Henderson moved

2

*pro se* to convert his Chapter 13 petition to a Chapter 7 petition. On January 8, 2018, Henderson amended his petition to add creditors. The bankruptcy court discharged Henderson's debts on January 22, 2018.

While his bankruptcy case was ongoing, on September 1, 2017, Henderson filed the complaint in this matter. He alleged that his employer, USSA, had required him to work "off the clock," failed to keep accurate time sheets, failed to pay him overtime wages, and deducted maintenance and uniform fees from his wages in violation of the FLSA. Henderson also alleged that he was fired in retaliation for complaining about these violations. On May 23, 2018, USSA filed a motion for summary judgment, arguing that Henderson's claims were barred by judicial estoppel because he represented to the bankruptcy court that no such claims existed. USSA also argued in the alternative that Henderson lacked standing because the bankruptcy trustee was the real party in interest and therefore the only party with standing to pursue the claims.

The district court granted the motion for summary judgment in the present case on October 17, 2018, concluding that Henderson's claim was judicially estopped because he took an inconsistent position in the bankruptcy proceeding with the intent to mislead the bankruptcy court. The district court explained that Henderson had not included his FLSA claims in his initial petition or in any other filing with the bankruptcy court, failed to list the claims even though the property

3

schedule expressly asked for claims that had not yet been filed, was likely aware of his claims at the time he filed for bankruptcy, and amended his schedule to include his claims against MARTA but not those against USSA. The district court also considered Henderson's level of sophistication as a factor weighing against a finding of intent but found the other factors outweighed it. The district court also agreed with USSA that Henderson lacked standing to pursue his claims because his cause of action became part of the Chapter 7 bankruptcy estate, and, therefore, the bankruptcy trustee was the only party with standing to pursue the claims. On November 16, 2018, USSA moved for an order of costs in the amount of $2,655.25, which the court granted. Henderson timely appealed the order granting summary judgment and the order taxing costs.

## II.    Discussion

Our review is limited to three issues. First, Henderson argues that the district court erred in concluding that he lacked standing. Second, Henderson argues that the district court abused its discretion in applying judicial estoppel because his inconsistent statements were the result of inadvertence rather than an intent to mislead. Third, Henderson argues that the district court abused its discretion in granting costs to USSA because USSA filed its motion too late, was not a prevailing party, and did not show that his claims were frivolous or filed in bad faith. Henderson attempts to raise additional issues regarding the merits of his

4

FLSA claims in his initial brief, but he makes only passing reference to those issues and offers any argument on them only in his reply brief. He also raised for the first time in his reply brief a challenge to the district court's denial of his motion for reconsideration. Although we read briefs filed by *pro se* litigants liberally, we do not consider issues raised for the first time in a *pro se* litigant's reply brief. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008). Nor do we consider issues raised only by passing reference without substantial argument. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014).

## A. Applicable Bankruptcy Law Principles

The start of a bankruptcy case creates an estate made up of nearly all the debtor's assets. 11 U.S.C. § 541(a)(1). The estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *Id*. In a Chapter 13 proceeding, the debtor's assets, including his pre-petition assets, are returned to him after the bankruptcy court approves of a proposed repayment plan. *Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1179–80 (11th Cir. 2017) (en banc). However, in a Chapter 7 proceeding, the debtor forfeits his pre-petition assets, which are liquidated by the Chapter 7 trustee, but his post-petition earnings and acquisitions are shielded from creditors, giving the debtor "an immediate fresh start and a break from the financial past." *Id.* at 1179. When a case is converted from a Chapter 13 proceeding to a Chapter 7 proceeding, the Chapter 7 estate

5

consists of all property belonging to the debtor as of the date that the original Chapter 13 petition was filed. *Harris v. Viegelahn*, 135 S. Ct. 1829, 1837 (2015).

Causes of action belonging to a debtor at the initiation of his bankruptcy case become part of the bankruptcy estate. *Parker v. Wendy's Int'l., Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004). When a debtor's assets include a civil claim, that claim will be treated differently depending on whether the debtor seeks discharge under Chapter 7 or Chapter 13. *Slater*, 871 F.3d at 1180. A Chapter 13 debtor retains standing to pursue his civil claim. *Id.* However, after a cause of action becomes part of a Chapter 7 bankruptcy estate, the trustee, as the representative of the estate, becomes the only party with standing to bring that cause of action. *Parker*, 365 F.3d at 1272. The rights of the debtor to that cause of action are thus eliminated, unless the trustee abandons the property under 11 U.S.C. § 554. *Id.* However, where the cause of action was not listed on the property schedule so that the trustee does not know about it, the cause of action cannot be abandoned and remains in the bankruptcy estate once the bankruptcy case is closed. *Parker*, 365 F.3d at 1272 (citing *Mobility Sys. & Equip. Co. v. United States*, 51 Fed. Cl. 233, 236 (Fed. Cl. 2001); *Vreugdenhill v. Navistar Int'l Transp. Corp.*, 950 F.2d 524, 525–26 (8th Cir. 1991)).

6

## B. Summary Judgment

We review the district court's application of judicial estoppel for abuse of discretion and its factual findings for clear error. *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010). The doctrine of judicial estoppel is intended to "prevent the perversion of the judicial process and protect its integrity . . . by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Slater v. United States Steel Corp.*, 871 F.3d 1174, 1180 (11th Cir. 2017) (en banc) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (alterations adopted)).

Henderson suggests that the district court applied the wrong test for determining whether judicial estoppel applies. The Supreme Court developed a three-part test that "typically inform[s]" the decision of whether to apply judicial estoppel: (1) whether the position is clearly inconsistent with the earlier position; (2) whether the party succeeded in persuading a court to accept its earlier position such that it "would create the perception that either the first or the second court was misled"; and (3) whether the party, if not estopped, would "derive an unfair advantage or impose an unfair detriment on the opposing party." *New Hampshire*, 532 U.S. at 750–51 (quotation marks omitted). In addition to this three-part test, the Court instructed that "judicial estoppel must not be applied to an inadvertent

inconsistency." *Id.* at 753. Henderson suggests that the district court should have applied this test, including the inadvertence standard, to his claims.

The Supreme Court recognized in *New Hampshire* that its test was not an "exhaustive formula for determining the applicability of judicial estoppel." *Id.* at 751. And in light of that recognition, our precedent on inadvertence, and the fact that the party invoking judicial estoppel was not a party in the other proceeding, this Court has developed a two-part test to determine whether a party is judicially estopped from pursuing his claims because he did not disclose them to the bankruptcy court. Under that test, the court asks (1) whether the party took inconsistent positions under oath in separate proceedings, and (2) whether those inconsistent positions were "calculated to make a mockery of the judicial system." *Slater*, 871 F.3d at 1181 (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002) *overruled on other grounds by Slater*, 871 F.3d at 1185 & n.10). The district court did not err by applying this two-part test.

The district court did not abuse its discretion in finding step one satisfied here. Step one is satisfied when the plaintiff fails to disclose a claim against a third party in a bankruptcy proceeding (regardless of the chapter) and then pursues that claim in court. *Id.* at 1180. When he filed his Chapter 13 bankruptcy petition, Henderson was asked to list all "claims against third parties, whether or not [he] had] filed a lawsuit or made a demand for payment," to which he responded "no."

8

Henderson then amended his bankruptcy schedule numerous times without disclosing this lawsuit.

As for step two, this Court's precedent previously "treated the fact of the plaintiff's omission as establishing the requisite intent." *Id.* However, this Court sitting en banc clarified in *Slater* that the district court must examine all the facts and circumstances of the case in determining whether the plaintiff intended to make a mockery of the judicial system. *Id.* at 1180, 1185. To guide the district courts in this determination, this Court has explained that

> the court may consider such factors as the plaintiff's level of sophistication, whether and under what circumstances the plaintiff corrected the disclosures, whether the plaintiff told his bankruptcy attorney about the civil claims before filing the bankruptcy disclosures, whether the trustee or creditors were aware of the civil lawsuit or claims before the plaintiff amended the disclosures, whether the plaintiff identified other lawsuits to which he was party, and any findings or actions by the bankruptcy court after the omission was discovered.

*Id.* at 1185. This list of factors is not exhaustive, and the court can "consider any fact or factor it deems relevant to the intent inquiry." *Id.* at 1185 n.9.

The district court did not abuse its discretion in determining, based on all of the facts and circumstances, that Henderson intended to make a mockery of the judicial system. As the district court explained, Henderson failed to include his FLSA claims in his initial bankruptcy petition and also in several amendments and other filings he made to the bankruptcy court. *See id.* at 1185; *see also Weakley v.*

9

*Eagle Logistics*, 894 F.3d 1244, 1246 (11th Cir. 2018) (considering the fact that the plaintiff failed to include his lawsuits in any of his six separate amendments to his schedules and filings as evidence that he intended to mislead).[1] The district court also considered that Henderson was specifically asked on his property schedule to list any claims "whether or not [he had] filed a lawsuit or made a demand for payment." That question directly rebuts Henderson's argument that his inconsistency should be excused because he did not know that he had to disclose unfiled claims. Also supporting the finding of intent is the fact that Henderson amended his bankruptcy schedule to include another potential personal injury claim against MARTA. As the district court explained, Henderson's "disclosure of that potential lawsuit while omitting this action shows that he understood the requirement to amend his disclosures but nonetheless chose not to disclose this action." *See Weakley*, 894 F.3d at 1246 (noting that the plaintiff's failure to disclose two lawsuits while not disclosing two others weighed in favor of a finding of

---

[1] Henderson argues that this factor is negated by the fact that he eventually corrected his bankruptcy petition. That argument fails for two reasons. First, he did not present that information until his motion for reconsideration, and he failed to raise any issue regarding the motion for reconsideration in his initial brief. *See Timson*, 518 F.3d at 874. Thus, he has abandoned the argument. Second, he did not seek to reopen his bankruptcy case to amend his property schedule until after USSA filed its motion for summary judgment. "Allowing [a debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets." *Burnes*, 291 F.3d at 1288.

10

intent).[2] For these reasons, the district court did not abuse its discretion in determining based on all of the facts and circumstances of the case that Henderson intended to make a mockery of the judicial system by pressing his USSA claims in one forum while denying their existence in another.

Henderson argues that judicial estoppel should not apply because he was represented by counsel when he filed his bankruptcy petition and amended his schedule to include the MARTA claim, and as a result, he never saw the relevant documents. But he has not alleged that he told his attorney about his claim against USSA. Moreover, even if the failure to disclose the USSA claim could be attributed to Henderson's attorney and even if such action fell below what is reasonable under the circumstances, his remedy is a suit against the attorney for malpractice. *See Link v. Wabash R. Co.*, 370 U.S. 626, 634 n.10 (1962) (explaining that to keep a plaintiff's suit alive in such a situation "would be visiting the sins of plaintiff's lawyer upon the defendant").

---

[2] Henderson suggests that *Weakley* is distinguishable because the district court reasoned that the plaintiff's disclosure of two lesser value lawsuits while failing to disclose two higher value lawsuits indicated a motive to exclude the potentially more lucrative lawsuits. It is unclear which of Henderson's claims is potentially more lucrative. But this Court has never held that the value of an undisclosed claim relative to a disclosed claim is dispositive of the estoppel issue. The court in *Weakley* considered the difference in value only as relevant to the plaintiff's intent to deceive. As we discuss, the district court considered all the relevant facts and circumstances of this case and concluded that Henderson intended to make a mockery of the judicial system. It did not abuse its discretion in doing so.

11

Henderson also argues that the district court failed to consider his lack of sophistication in applying judicial estoppel. That argument is contrary to the district court's opinion, which expressly stated that although Henderson's level of sophistication weighs against a finding that he had an intent to make a mockery of the judicial system, the other factors weighed in favor of an intent to deceive. Because there were significant factors weighing in the opposite direction, the district court's decision to apply judicial estoppel was not an abuse of discretion.

Henderson contends that even if judicial estoppel applied to his claims for monetary relief, he was still entitled to pursue his claims for injunctive relief. Our precedent makes clear that judicial estoppel does not apply to an unreported claim for injunctive relief. *Burnes*, 291 F.3d at 1288. The problem for Henderson is that his complaint does not make a claim for injunctive relief. It raises only claims for damages and for a declaration that his "rights [had] been violated." Even if we construe Henderson's brief on appeal as requesting that he be able to pursue such declaratory relief, his argument still fails. "[I]n order for this Court to have jurisdiction to issue a declaratory judgment . . . [the plaintiff] must assert a reasonable expectation that the injury they have suffered will continue or will be repeated in the future." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999). A "remote possibility" of future injury is insufficient. *Id.* Because Henderson's complaint alleges that he no longer works at USSA and he

12

has not alleged any facts that would establish a likelihood of future injury by USSA, he is not entitled to declaratory relief. The district court thus did not abuse its discretion in determining that Henderson's claims are precluded by judicial estoppel.

The district court concluded in the alternative that Henderson's claims failed for lack of standing because the bankruptcy trustee was the real party in interest and thus the only party with standing to pursue the claims. USSA has brought to this Court's attention that while Henderson's case was pending on appeal, the trustee may have abandoned the claims. USSA's statement raises questions the district court did not have the opportunity to decide, such as whether the trustee properly effected an abandonment under 11 U.S.C. § 554, and if so, whether Henderson may now pursue his claims as the real party in interest. However, because the district court did not abuse its discretion in finding that Henderson's claims are precluded by judicial estoppel, we need not reach this issue.[3]

## C. Award of Costs

We review a district court's decision to award costs for abuse of discretion. *Mathews v. Crosby*, 480 F.3d 1265, 1276 (11th Cir. 2007). Under Rule 54(d)(1) of the Federal Rules of Civil Procedure, the prevailing party should generally be

---

[3] Though often discussed in terms of standing, the real party in interest question is not one of constitutional standing, which acts as a limitation on our subject-matter jurisdiction, but rather a question of who may litigate the claim, which does not. *See Barger v. City of Cartersville*, 348 F.3d 1289, 1292 (11th Cir. 2003) *overruled on other grounds by Slater*, 871 F.3d at 1185 & n.10.

13

allowed to recover certain statutorily enumerated costs, *see* 28 U.S.C. § 1920. That rule creates "a strong presumption that the prevailing party will be awarded costs" provided those costs do "not exceed those permitted by 28 U.S.C. § 1920." *Mathews*, 480 F.3d at 1276. A court may tax as costs fees for transcripts "necessarily obtained for use in the case" and fees for witnesses. 28 U.S.C. § 1920(2), (3). The Federal Rules provide no time limit within which a prevailing party must request costs, though the local rules for the Northern District of Georgia provide that a bill of costs must be filed within 30 days after the entry of judgment, and no costs are awarded if the bill is not timely filed. N.D. Ga. Civ. R. 54.1.

The district court did not abuse its discretion in awarding costs to USSA because USSA was a prevailing party and no statute, rule, or court order prohibits the awarding of costs. Henderson's arguments do not persuade us to the contrary. First, Henderson argues that USSA was required to file its bill of costs within 14 days after entry of judgment, and therefore, its request was untimely. We disagree. The Federal Rules do not provide a time limitation for filing a request for "costs other than attorney's fees" under Rule 54(d)(1). But the Northern District of Georgia Civil Rules provide that a bill of costs must be filed within 30 days. Because USSA filed its bill of costs within 30 days after the entry of judgment in compliance with the local rules, the filing was timely.

14

Second, Henderson argues that USSA was not a prevailing party under Rule 54(d)(1) because judicial estoppel is an affirmative defense. Again, we disagree. This Court has explained that "[u]sually the litigant in whose favor judgment is rendered is the prevailing party for purposes of [R]ule 54(d)." *Head v. Medford*, 62 F.3d 351, 354 (11th Cir. 1995) (quoting *United States v. Mitchell*, 580 F.2d 789, 793 (5th Cir. 1978), *superseded by statute on other grounds*, Fair Housing Amendments Act of 1988, Pub. L. 100–430, 102 Stat. 1619, *as recognized in United States v. City of Jackson*, 359 F.3d 727, 737 (5th Cir. 2004)). Accordingly, "[t]here is no question" that a party in whose favor the district court granted summary judgment is a prevailing party for purposes of Rule 54(d)(1). *Id.* at 355. And that rule applies even if the party prevailed on an affirmative defense. *See Myricks v. Fed. Res. Bank of Atlanta*, 480 F.3d 1036, 1043 (11th Cir. 2007) (concluding that a party that prevailed on an affirmative defense is a prevailing party under Rule 54(d)). USSA is thus a prevailing party.

Third, Henderson argues that USSA was not entitled to costs because it failed to show that his claims were frivolous or pursued in bad faith. But Rule 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." It does not require a showing of bad faith or frivolity. Henderson appears to have imported into Rule 54(d)(1) the standard applicable for sanctions

15

under Rule 11 of the Federal Rules of Civil Procedure, which provides that a district court may award sanctions against an attorney who "pursues a frivolous claim in bad faith." *Silva v. Pro Transp., Inc.*, 898 F.3d 1335, 1340 (11th Cir. 2018). But that standard does not apply in the context of an award of costs under Rule 54(d)(1). USSA was thus not required to show bad faith or frivolity.

USSA timely filed its request, USSA was a prevailing party, and no statute, rule, or court order prohibited the costs award. The district court did not abuse its discretion by awarding costs to USSA.

## III.    Conclusion

The district court did not abuse its discretion in determining that judicial estoppel precludes Henderson's claims, which determination is sufficient to sustain the order granting summary judgment. The district court also did not abuse its discretion in awarding costs to USSA. We thus affirm.

**AFFIRMED.**

16